**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| NEW DAIRY SOUTH CAROLINA, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF NORTH CHARLESTON, SOUTH CAROLINA,<br><br>Defendant. | ) | No. 2:25-cv-01242-DCN<br><br>**ORDER** |

The following matter is before the court on plaintiff New Dairy South Carolina, LLC's ("New Dairy") motion to compel discovery compliance and for sanctions, ECF No. 28. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## I. BACKGROUND

This suit arises from defendant the City of North Charleston, South Carolina's (the "City") alleged "downzoning" of New Dairy's property (the "Property") in September of 2022. ECF No. 1-1, Compl. ¶ 13. Generally, New Dairy alleges the City's "unjustified downzoning of the Property greatly diminished the Property's fair market value by prohibiting its long-standing original purpose and use." Id. ¶ 63. Additionally, New Dairy contends the alleged downzoning violated a comprehensive plan (the "Comprehensive Plan") the City adopted in 2020. Id. ¶ 16. New Dairy alleges that it ultimately sold the property "to a third-party developer for only $5.6 million—a fraction of its established market value under the prior industrial zoning." Id. ¶ 27.

New Dairy filed suit in the Charleston County Court of Common Pleas on January 28, 2025, asserting claims against the City for inverse condemnation under state law, a state law equal protection violation, regulatory takings under 42 U.S.C. §§ 1983, 1988, and a federal law equal protection violation. Id. ¶¶ 35–79; New Dairy South Carolina, LLC v. City of North Charleston, South Carolina, Case No. 2025-CP-10-00505 (Charleston Cnty. Ct. C.P. Jan. 28, 2025). The City removed the action to this court on February 28, 2025, invoking federal question and supplemental jurisdiction. ECF No. 1 at 2.

This order concerns the City's discovery obligations. In July of 2025, the City began providing documents responsive to New Dairy's discovery requests "on a rolling basis[ ]" due to "the sheer volume of documents[.]" ECF No. 28-1 at 12. Thereafter, on September 16, 2025, the City's counsel suggested entering into an ESI protocol, but, according to New Dairy's counsel, failed to attach a proposed protocol. ECF No. 28 at 3. New Dairy claims it provided a proposed protocol to move things along but received no substantive response from the City. Id. The City's counsel claims that he did in fact send a proposed ESI protocol. ECF No. 29 at 7.

On December 10, 2025, the City sent New Dairy a production of documents (the "Production") that amounted to nearly 800,000 pages of documents and 187 GB of data. ECF No. 28 at 3. New Dairy characterizes the Production as a "document dump" that was initially "inaccessible" due to its size. Id. The City's counsel represented that the Production "consist[ed] of documents [his] office has not yet reviewed," but believed to "contain no privileged material." ECF No. 28-15 at 2. New Dairy asserts it did not

receive a reviewable version of the Production until late January of 2026. ECF No. 28 at 4. According to New Dairy:

> The Parties conferred via videoconference on February 17, 2026 and agreed to extend New Dairy's motion to compel deadline to March 12, 2026 to allow New Dairy to review the City's revised discovery responses, privilege log, and document productions, all of which the City was to accomplish by February 27, 2026.

Id. "Since the Parties' last conferral correspondence," New Dairy claims "counsel for the City has again failed to remedy discovery deficiencies" by the agreed upon dates and, further, "unilaterally changed the deadline by which it would remedy its improper document production" to March 13, 2026. Id.

The City's counsel states that he has "made all efforts to speed up the review process[ ]" despite the large number of documents. ECF No. 29 at 4–5. The City's counsel generally takes the position that the City is not all to blame for discovery delays. See id. at 4–24. He notes that, consistent with large volume document productions in other matters, he began converting the documents from PST files to PDF files in August of 2025. Id. at 4–5. On September 5, 2025, New Dairy's counsel requested PST files, causing the City's counsel to "completely change up how the City's counsel was producing the documents[.]" Id. at 5. Shortly thereafter, on September 10, 2025, New Dairy's counsel communicated that New Dairy was now requesting the documents be produced as "Load files." Id. at 6.

The City's counsel also explains that unexpected delays arose in December 2025 when he was "unlucky to have COVID (for the first time ever)" followed by a bout with "the flu." Id. at 9 n.2. The City's counsel details various communications between him

and New Dairy's counsel that show he has "been attempting to address each concern . . . as to the issues raised." Id. at 12.

The City's counsel claims it is "patently false" that he agreed to a March 13, 2026, deadline to remedy discovery issues during the videoconference on February 17, 2026. Id. at 13. Rather, he stresses that he merely provided March 13, 2026, as a date by which New Dairy "could expect to receive the City's supplemental production[.]" Id. "Technical difficulties" on March 11, 2026 "necessitated the City's re-review" of the entire production according to the City's counsel. Id. He thus requested a "modest extension of "four additional business days[,]" which he claims New Dairy's counsel "was so petty that she refused the City's request" to provide the supplemental production at 5:00 P.M., instead insisting the production be received by noon that same day.[1] Id. The City's counsel sums up his frustrations as follows: "[New Dairy's] complaint that the City unilaterally changed a deadline is particularly infuriating because (1) the deadline did not exist, and (2) Plaintiff's counsel unilaterally changed their own discovery deadline that actually existed." Id. at 14.

On March 23, 2026, New Dairy moved to compel "discovery compliance and for sanctions[,]" due to outstanding deficiencies existing after the City provided supplemental responses on March 17, 2026. ECF Nos. 28 at 4, 29 at 14. The City responded in opposition on April 6, 2026, ECF No. 29, to which New Dairy replied on

---

[1] Evidently these discovery issues have caused friction between counsel for both parties. The court finds that the City's counsel's personal jab at opposing counsel—accusing her of being "petty"—is not an appropriate statement to include in a brief submitted to the court.

April 13, 2026, ECF No. 30. The court held a hearing on the motion on June 24, 2026.[2] ECF No. 33. As such, the motion is fully briefed and now ripe for the court's review.

## II. DISCUSSION

The court first addresses privilege issues raised in New Dairy's motion.

### A. Privilege

New Dairy first argues that the City's assertion of privilege in response to request for production 18 is improper. The request seeks "[a]ll documents or communications that you considered or reviewed in responding to the Complaint." ECF No. 28-2 at 129. The City objected to the extent that the request "seeks information that may reveal the mental thoughts, impressions, conclusions, opinions, or legal theories of counsel or that is protected by the attorney-client privilege or work product doctrine." Id. This response is deficient in two respects according to New Dairy. First, the objection does not "state whether any responsive materials are being withheld on the basis of that objection[,]" in violation of Rule 34(b)(2)(C). Fed. R. Civ. P. 34(b)(2)(C); see ECF No. 28 at 10. Second, the objection does not state whether any non-privileged information responsive to the request exists and/or has been withheld—i.e., the objection fails to actually respond to the request. See ECF No. 28 at 10. In line with these deficiencies, New Dairy requests the court compel the City (1) "to state whether it is withholding documents responsive to request for production 18 on the basis of its privilege assertion;" and (2) "to produce non-privileged documents responsive to th[e] request." Id. The City provides no response to

[2] At the hearing, the parties indicated to the court that a ruling was not necessary as to New Dairy's request an for index of the City's Production or New Dairy's request to compel the City to produce a rule compliant privilege log. Because these issues have been resolved, the court will not address them.

this argument. See ECF No. 29. As such, the court agrees with New Dairy and grants its request to compel a response that states whether the City is withholding documents responsive to request for production 18 on the basis of privilege and to compel the production of any non-privileged documents responsive to the request. The City shall provide a compliant response within ten (10) days of the issuance of this order.

Second, New Dairy maintains that the City's failure to initially produce a rule compliant privilege log constitutes a waiver of privilege as to the documents described in the privilege log. ECF No. 28 at 11. Specifically, it claims that "[i]n this Circuit, a party's failure to meet its burden [of showing] that the information is in fact privileged constitutes a waiver . . . and requires disclosure." Id. (first citing Ambling Mgmt. Co. v. Univ. View Partners LLC, 2010 WL 2465021, at *3 (D. Md. June 11, 2010), then citing Progressive Se. Ins. Co. v. Arbormax Tree Serv., LLC, 2018 WL 4431320, at *7 (E.D.N.C. Sept. 17, 2018)). The decisions New Dairy cites involved more severe conduct than that present here. Ambling Mgmt. Co., 2010 WL 2465021, at *3 (declining to allow parties to cure defective privilege logs when the initially produced privilege logs had not been filed with objections to the discovery); Progressive Se. Ins. Co., 2018 WL 4431320, at *6 (finding privilege waived when party did "not produce[ ] a privilege log for the documents . . . it [was] withholding.").

While it is well-established that "failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege[,]" see Wellin v. Wellin, 2015 WL 5785709, at *11 (D.S.C. Jul. 31, 2015) (emphasis added), waiver is not automatic, see In Re Dep't of Justice Subpoenas to ABC, 263 F.R.D. 66, 70 (D. Mass. 2009) (rejecting per se waiver requirement); see also Carlson v. Freightliner, LLC 226 F.R.D.

343, 363 (D. Neb. 2004) (holding, based on the advisory committee comments to Rule 26(b)(5), that a court may consider the privilege waived when an objection is not timely, though the court is not obligated to consider the privilege waived). To be sure, waiver of privilege is "an exceedingly harsh sanction[.]" Rambus, Inc. v. Infineon Tech. AG, 220 F.R.D. 264, 274, (E.D. Va. 2004). Given the "seriousness of privilege waiver," courts are typically hesitant to find waiver absent "unjustified delay, inexcusable conduct[,] and bad faith." Smith v. James C. Hormel School of Va. Inst. of Autism, 2010 WL 3702528, at *5 (W.D. Va Sept. 14, 2010); see also Dep't of Justice Subpoenas to ABC, 263 F.R.D. at 71 (stating waiver is appropriate in cases involving "egregious" conduct or "a deliberate pattern of delay"); Welch v. Eli Lilly & Co., 2009 WL 700199, at *14 (S.D. Ind. Mar.16, 2009) (declining to find the privilege waived despite defendant's inadequate privilege log).

The City's response brief indicated that it would provide a revised privilege log, and because New Dairy recently confirmed in email correspondence with the court that it still does not seek production of a rule compliant privilege log, the court presumes that the City's subsequently produced privilege log complies with the Federal Rules of Civil Procedure. Because there is no indication that the City has acted in bad faith, caused unjustified delay, or engaged in inexcusable conduct, the court does not find the exceedingly harsh sanction of waiver to be appropriate. See Smith, 2010 WL 3702528, at *5; Rambus, Inc., 220 F.R.D. at 274.

Third, New Dairy argues the City waived "attorney-client privilege as to communications between at least one of its attorneys (Derk Van Raalte) and City personnel regarding re-zoning pursuant to the Comprehensive Plan, including as to the

Property and related properties identified in the Complaint, by selectively producing certain communications." ECF No. 28 at 11–12. Citing to Fourth Circuit precedent, New Dairy asserts that "when a party reveals part of a privileged communication to gain an advantage in litigation, the party waives attorney-client privilege as to all other communications relating to the same subject matter." U.S. v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (emphasis added); see ECF No. 28 at 12. The City notes in response that the its disclosure was "unintentional" and not designed to achieve a tactical advantage. ECF No. 29 at 19–20. New Dairy does not present any evidence to show that the City's disclosure was intentional or designed to achieve an advantage in this litigation.

As such, the court does not find the City's unintentional disclosure of communications to constitute a waiver of privilege as to documents concerning the City's re-zoning efforts. See also PharmaNetics, Inc. v. Aventis Pharms., 2005 WL 8159272, at *3 (E.D.N.C. Feb. 15, 2005) (finding Jones, which involved clients publicizing "portions of . . . legal opinions in brochures" to be distinguishable from circumstance where a client-corporation's representative was present at board meetings, such that privilege was not waived in the latter circumstance).

**B. Interrogatories**

New Dairy next claims the City's responses to its interrogatory requests are deficient on a number of grounds. The court first takes up New Dairy's argument that the City must provide narrative responses to interrogatories 4, 5, 7, 9, 10, 11, and 12 because its production of documents in response to those interrogatories does not comply with Rule 33(d). ECF No. 28 at 16–19.

### 1. Rule 33(d): Inadequacy of the City's Responses

Rule 33(d) permits a party to produce documents in response to an interrogatory in lieu of a traditional narrative response subject to certain constraints:

> (d) Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> > (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> >
> > (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d)(1)–(2) (emphases added).

A party challenging Rule 33(d) responses to interrogatories must make a prima facie showing that a Rule 33(d) response "is somehow inadequate to the task of answering the discovery, whether because the information is not fully contained in the documents, is too difficult to extract, or other such reasons." Securities and Exchange Commission v. Elfindepan, 206 F.R.D. 574, 576 (M.D.N.C. 2002). The moving party meets its initial burden upon showing that "specific, relevant information in [non-movant's] production can only be extracted with substantial difficulty." Minter v. Wells Fargo Bank, N.A., 286 F.R.D. 273, 277 (D. Md. 2012). The burden then shifts to the producing party to justify the adequacy of its Rule 33(d) responses. Elfindepan, 206 F.R.D. at 576.

To meet its initial burden, New Dairy asserts that the information it seeks "is not fully contained within the documents identified[.]" ECF No. 28 at 20. Furthermore, New Dairy claims it would be exceedingly difficult for it to extract the desired information from the documents produced, while the burden the City faces in providing the requested narrative responses is slight. Id. New Dairy breaks the interrogatories into two groups to demonstrate the inadequacy of the City's responses. Id. at 13–19. New Dairy asserts that the City's production of documents in response to interrogatories 4, 5, 7, and 9 provide too little information to adequately respond to the questions posed, while the documents the City produces in response to interrogatories 10, 11, and 12 provide too much information to be helpful. Id.

With respect to interrogatories 4, 5, 7 and 9 New Dairy is seeking information related to (1) the specific goals, purposes, and motivations underlying the City's adoption of a new Comprehensive Plan in June of 2020; (2) the reason the City incorporated commercial re-development into the Plan; and (3) the reason the City amended zoning classifications in certain areas of the City but not others. Id. at 16; ECF No. 28-1 at 7–10. The documents provided, according to New Dairy, comprise the Comprehensive Plan itself. ECF Nos. 28 at 16, 28-1 at 7–10. Because the interrogatories seek to discern the City's motivations and purposes underlying the Plan, as opposed to the contents of the Plan itself, the City's responses fail to provide a "complete response[ ]" in New Dairy's view. ECF No. 28 at 16 (citing Landis v. Tailwind Sports Corp., 317 F.R.D. 592, 594 (D.D.C. 2016) ("Courts have consistently held that Rule 33(d) cannot be used with respect to contention interrogatories" because "documents normally reveal evidence, not a party's contentions." (cleaned up))). New Dairy further observes that the City points to

approximately 169 documents in response to interrogatory 9, which simply asks the City to "explain how this reclassification related to the goals of the Comprehensive Plan[.]" ECF No. 28 at 16 (quoting ECF No. 28-1 at 16).

The opposite is true, New Dairy argues, for interrogatories 10, 11, and 12. For example, Interrogatory 10 asks the City to

> [i]dentify any persons associated with the City who communicated with Roper entities about potentially constructing a new healthcare campus, providing their name, address, employer, job title, e-mail address, and telephone number, and identify and describe the specific communications.

ECF No. 28 at 17 (quoting ECF No. 28-1 at 17). The City responded with a list of Bates-ranges that spans five pages of the interrogatory responses, amounting to almost 2,000 pages of documents. ECF No. 28-1 at 17–24. Similarly, interrogatory 12 requests that the City identify a date certain on which an event occurred, but the City responds by pointing to sixty-five (65) pages of documents. ECF Nos. 28 at 17, 28-1 at 30–32.

In light of the information requested in its interrogatories and the broad swath of documents produced in response, New Dairy contends that the burden imposed on it to sift through those documents to discern information responsive to its interrogatories—information likely absent from the documents—would be substantial, while the burden imposed on the City to simply provide a narrative response would be slight. See ECF No. 28 at 24. The court agrees with New Dairy and finds that it has met its initial burden of showing that the City's Rule 33(d) interrogatory responses either do not contain the desired information or that the information requested could only be extracted with great difficulty. See Elfindepan, 206 F.R.D. at 576; Fed. R. Civ. P. 36(d).

The burden thus shifts to the City to justify the adequacy of its interrogatory responses. See Elfindepan, 206 F.R.D. at 576. The City justifies its use of Rule 33(d)

responses on two grounds. First, it claims to have not "provide[d] wide or unnecessary Bates ranges; rather it specifically targeted and identified the documents responsive to Plaintiff's request[ ]" without any record citations. ECF No. 29 at 18. The court finds that this conclusory assertion is belied by the responses themselves. See ECF No. 28-1.

Second, the City argues that New Dairy cannot meet its burden because "inquiries into the motivations and intentions of municipal actions" are privileged under South Carolina law. ECF No. 29 at 17–18. The City only cites one case in support of this argument that post-dates the Great Depression—Berkeley Elec. Co-op., Inc. v. Town of Mount Pleasant, 417 S.E.2d 579 (S.C. 1992).[3] As noted by New Dairy, however, the rule set forth in Berkeley Elec. Co-op. pertains to the admissibility of individual opinion evidence given by municipal officials—it is not rule of privilege or discoverability. ECF No. 30 at 9. The opinion itself makes this plainly apparent: "[p]arole evidence cannot be admitted to explain, enlarge, or contradict minutes of the proceeding of a town council unless the minutes are incomplete or ambiguous." Berkeley Elec. Co-op., 417 S.E.2d at 581–82 (finding that "the trial judge erred in admitting parole evidence to contradict the . . . town council minutes."). The City's attempt to assert an evidentiary rule as a basis for claiming privilege does not alter the court's conclusion that New Dairy has met its burden of showing inadequacy of its Rule 33(d) interrogatory responses. Moreover, its conclusory assertion that it has provided targeted document ranges in response to New Dairy's interrogatories fails to justify its use of Rule 33(d) responses. Accordingly, the

[3] The City cites two other dated cases for the proposition that courts cannot speculate as to the motive of the legislature when confronted with the plain language of a statute. See ECF No. 29 at 16 (citing Douglas v. City Council of Greenville, 75 S.E. 687, 688 (1912); Columbia Ry., Gas & Elec. Co. v. Carter, 121 S.E. 377, 379 (1924)).

court will grant New Dairy's request to compel narrative responses to interrogatories 4, 5, 7, 9, 10, 11, and 12. The City shall comply with this ruling with ten (10) days of the issuance of this order.

**2. Rule 33(d): Business Records Requirement**

New Dairy further seeks narrative responses to interrogatories 3 through 5 and 7 through 13 on the ground that Rule 33(d) permits the production of "business records"—and not "discovery materials more generally." ECF No. 28 at 13 (first quoting Fed. R. Civ. P. 33(d), then quoting Tailwind Sports Corp., 317 F.R.D. at 595)). According to New Dairy, "[a] business record is a '[a] report, memorandum, or other record made in the ordinary course of business.' " ECF No. 28 at 13 (quoting Sohmer v. UnitedHealth Grp., Inc., 2020 WL 6375880, at *4 (D. Minn. Oct. 30, 2020) (citing Black's Law Dictionary (11th ed. 2019))). New Dairy asserts that the documents the City has produced, largely emails, do not qualify as business records. ECF No. 28 at 13–14. The City fails to respond to this argument. See ECF No. 29. As such, the court will grant New Dairy's request to compel the City to provide narrative responses to interrogatories 3 through 5 and 7 through 13.[4] The City shall comply with this ruling with ten (10) days of the issuance of this order.

**3. The City's Objections**

The City asserts in its response that it will stand on its Rule 26(b)(1) proportionality objection to interrogatories 10 and 11. ECF No. 29 at 18. To begin with,

---

[4] Because the Court grants both of New Dairy's requests concerning the City's misuse of Rule 33(d), the court's ruling requires the City to provide narrative responses to interrogatories 3, 4, 5, 7, 8, 9, 10, 11, 12, and 13. However, if New Dairy has already received a response to a particular interrogatory that it deems sufficient, the City need not provide an additional response to that interrogatory in order to comply with this order.

the City does not even argue that the "burden or expense" of responding to interrogatories 10 and 11 "outweighs its likely benefit." See Fed. R. Civ. P. 26(b)(1); ECF No. 29 at 19. Instead, its motion states that the interrogatories seek information not relevant to this lawsuit. See ECF No. 29 at 19 (characterizing information sought in interrogatories 10 and 11 as having "nothing to do with Plaintiff's causes of action or the City's defenses."). Interrogatories 10 and 11 seek information pertaining to the City's relationship with Roper Entities ("Roper"). See ECF No. 28-1 at 18, 25. The City claims the information sought is irrelevant because "Roper bought a separate piece of property that is not is not at issue in this matter in the general area where Plaintiff sold its property." ECF No. 29 at 19. In reply, New Dairy argues that the information sought is relevant because it alleges that the City implemented the zoning changes at issue to allow for the development of a medical complex by Roper. ECF No. 30 at 11 (citing Compl. ¶ 30). Because New Dairy pleads that the City's alleged downzoning was designed to enable the development of a medical corridor, information pertaining to the City's relationship with an entity undertaking such development is plainly relevant to New Dairy's claims. See Compl. ¶ 30; Fed. R. Civ. P. 26(b)(1); Patrick v. Teays Valley Trustees, LLC, 297 F.R.D. 248, 256 (N.D.W. Va. 2013) ("In general, parties in a civil action enjoy broad discovery, and 'the discovery rules are given 'a broad and liberal treatment.' " (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 983 (4th Cir. 1992))).

Moreover, as the party resisting discovery, the City bears the burden of "explaining precisely why its objections are proper given the broad and liberal construction of the federal discovery rules." Carpenter v. Res-Care Health Servs., Inc.,

2013 WL 1750464, at *1 (S.D.W. Va. Apr. 23, 2013). The City's proffered explanation—that Roper did not purchase the Property formerly owned by New Dairy and that Roper purchased property outside the "general area" where New Dairy sold the Property—fails to meet that burden. Burd v. Ford Motor Co., 2014 WL 6471515, at *2 (S.D.W. Va. Nov. 18, 2014) ("Conclusory . . . allegations are simply insufficient to support an objection based on the grounds of annoyance, burdensomeness, oppression, or expense."). As such, the court finds that the City's relevance objections to interrogatories 10 and 11 are without merit. The court therefore reiterates that the City must provide narrative responses to interrogatories 10 and 11, as ordered above. See supra pp. 12–13.

**C. Interrogatory 16**

New Dairy requests that the court compel a response to interrogatory 16 because the City has failed to respond to the interrogatory and its objection is without merit.[5] The City only objects to interrogatory 16 on the ground that "it exceeds the maximum number allowable under . . . Rule 33(a)(1)." ECF No. 28-1 at 36. The City does not discuss this objection in its brief, see ECF No. 29, but New Dairy offers two reasons the City's objection is misguided, see ECF No. 28 at 19–20. First, the court agrees with New Dairy that the City cannot plausibly argue interrogatories 14 through 19 exceed the maximum number permitted under the Rules because the City did not object to interrogatories 1 through 13 being compound in nature. See ECF Nos. 28 at 19–20; 28-1 at 1–35. Second, the court agrees with New Dairy that its interrogatories form a single "line of inquiry" and therefore do not constitute compound requests. See Mullins v. Prudential Ins. Co. of

[5] New Dairy also sought to compel responses to interrogatories 14, 15, 17, 18, and 19 in its motion, ECF No. 28 at 24–25, but in recent email correspondence with the court, the parties represented that a ruling was only necessary as to interrogatory 16.

Am., 267 F.R.D. 504, 516 (W.D. Ky. 2010); ECF No. 28-1.

The City argues in its brief that it should not be burdened with responding to interrogatory 16 because it seeks information that is not proportional to the needs of this case. ECF No. 29 at 19; see Fed. R. Civ. P. 26(a). But, as noted above, the City only objected to interrogatory 16 on the ground that it exceeded the maximum number allowable under the Rules. ECF No. 28-1 at 36. Therefore, the City has waived its proportionality objection by failing to raise it when responding to interrogatory 16. See Fed. R. Civ. P. 33(b)(4).

As such, the court will grant New Dairy's request to compel a response to interrogatory 16. The City shall comply with this ruling within ten (10) days of the issuance of this order.

**D. Sanctions**

New Dairy moves for sanctions as a result of the City's conduct in discovery, seeking costs and reasonable attorneys' fees incurred in preparing its motion. See ECF No. 28 at 20–23. The court orders New Dairy to submit its costs incurred in preparing the instant motion, including its reasonable attorneys' fees, for in camera review. New Dairy shall submit its costs within ten (10) days of the issuance of this order. The court has yet to decide whether sanctions are appropriate, and this portion of the court's order should not be construed as an indication that the court will ultimately impose sanctions.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** New Dairy's request for an order finding that the City has waived privilege. The court **GRANTS** New Dairy's request to compel a rule compliant response to request for production 18. The court

**GRANTS** New Dairy's request to compel narrative responses to interrogatories 3, 4, 5, 7, 8, 9, 10, 11, 12, and 13. The court **GRANTS** New Dairy's request to compel a response to interrogatory 16. The court **DEFERS** ruling on New Dairy's request for sanctions and **ORDERS** New Dairy to submit its costs incurred in preparing the instant motion, including its reasonable attorneys' fees, for in camera review. Both New Dairy and the City shall comply within ten (10) days of the issuance of this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 28, 2026**
**Charleston, South Carolina**